IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ERVIN BILBILI, <u>et</u> <u>al.</u>,

              Plaintiffs,

      v.

CHARLES E. KLEIN, III, <u>et</u> <u>al.</u>,

              Defendants.

HON. JEROME B. SIMANDLE

Civil No. 02-2953 (JBS)

**OPINION**

APPEARANCES:

Michael Berger, Esq.
Tommie Ann Gibney, Esq.
ANDRES & BERGER, P.C.
264 Kings Highway East
Haddonfield, New Jersey 08033
    Attorneys for Plaintiffs

Thomas Anapol, Esq.
ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.
402 Park Boulevard
Cherry Hill, New Jersey 08002
    Attorney for Consol Plaintiff

Edward J. Tucker, Esq.
TUCKER & MUNYON
701 Route 73 South
Suite 120
Marlton, New Jersey 08053
    Attorney for Defendant Klein

A. Michael Barker, Esq.
Jodi L. Cohen, Esq.
BARKER, DOUGLASS & SCOTT, P.C.
Linwood Greene
210 New Road
Suite 12
Linwood, New Jersey 08221
    Attorneys for Defendants Egg Harbor City, The Egg Harbor
    City Police Department and James E. McGeary

Stephanie Smith, Esq.
James R. Birchmeier, Esq.
POWELL, BIRCHMEIER & POWELL
1891 State Highway 50
P.O. Box 582
Tuckahoe, New Jersey 08250
    Attorneys for Defendant Richard Jankowski

Steven Drake, Esq.
John Bannan, Esq.
REYNOLDS, DRAKE, WRIGHT & MACZYK, P.C.
P.O. Box 345
29 North Shore Road
Absecon, New Jersey 08201
    Attorneys for Defendant Keron Kevin Derod Craig

**SIMANDLE**, U.S. District Judge:

This matter arises from a fatal automobile collision between Plaintiffs and an off-duty police officer, Defendant Charles E. Klein, III, who, at the time of the accident, was allegedly intoxicated.  Before the Court are the motions for summary judgment by Defendants City of Egg Harbor City, the Egg Harbor City Police Department, and Mayor James E. McGeary (collectively "Municipal Defendants") [Docket Item 74,] Defendant Richard Jankowski, Director of Public Safety for Egg Harbor City from 1996 to 2001[1] [Docket Item 75,] and Defendant Patrolman Keron Kevin Derod Craig. [Docket Item 73.]

For the reasons now explained, the motions for summary judgment will be granted in their entireties and judgment will be entered in favor of these Defendants and against Plaintiffs.

---

[1] Defendant Jankowski joined the motion by Municipal Defendants by letter dated January 4, 2005. [Docket Item 75.]

2

I.    **BACKGROUND**

   A.   Traffic Stop

   On the night of May 21, 2000, Defendant Patrolman Keron
Kevin Derod Craig, a part-time/full-time officer with the Egg
Harbor City Police Department, was "out on patrol" alone. (Craig
Dep. Tr. at 38, 41.)  At approximately 1 a.m., Craig made a
routine traffic stop of a car operated and owned by Defendant
Charles E. Klein, III, an off-duty police officer with the Egg
Harbor City Police Department. (Id. at 46:1-4.)  Craig pulled
Klein over, without any apparent difficulty on Klein's part,
after visually observing his car to be speeding roughly 20 miles
per hour over the posted speed limit.  Craig did not observe
Klein's car to be swerving, and did not believe at the time that
Klein was intoxicated. (Id. at 47:19-21.)  Plaintiffs allege,
however, that Klein was visibly intoxicated.

   As Patrolman Craig pulled over Klein's car, Klein held his
police badge out of the window for Craig to see. (Id. at 48:21-
49:4)  Craig then exited his car and approached Klein's, at which
point Klein stuck his head out of the window and said "what's
up." (Id. at 49:1-4.)  Craig, recognizing the driver to be
Klein, issued a verbal warning to slow down and then returned to
his patrol car. (Id. at 49:5-8.)  During this brief encounter,
Craig never got closer than 30 feet to Klein. (Id. at 52:4-5.)
Craig testified that he at no point believed that Klein was
intoxicated. (Id. at 41:9-12.)

3

Craig testified at his deposition that it would have been "a problem" for him within the department to have issued a ticket to a superior police officer, such as Klein.  (Id. at 54:16-20.) According to Patrolman Craig, there was an unwritten understanding in the Egg Harbor City Police Department that professional courtesy would be extended to other officers who were pulled over for minor vehicle violations.  (Id. 39:14-40:2.)

B.   Fatal Collision

About one hour later that same evening, Plaintiffs Freddi Bilbili and Pjerim Gjecaj were passengers in an automobile operated by Gazmend Cena.  Freddi Bilbili's brother, Plaintiff Ervin Bilbili, was seated in the passenger seat, (F. Bilbili Dep. Tr. at 23; 2-4,) and Freddi Bilbili was seated in the rear seat along with Mr. Gjecaj.  (Id. at 23; 2-4.)  Freddi Bilbili was seated directly behind Mr. Cena and Mr. Gjecaj was seated behind the passenger seat.  (Id. at 17; 14-15.)  At approximately 2:12 a.m., the automobile operated by Mr. Cena was struck from behind by Klein's car.  Mr. Cena died following the crash – he was pronounced dead at the Atlantic City Medical Center at 4:10 a.m. The other passengers in the car sustained serious injuries.[2]

---

[2] The Court included a thorough description of the injuries allegedly suffered by Pjerim Gjecaj and Freddi Bilbili in its February 15, 2005 Opinion and will not repeat those facts herein.

C.   <u>History of Klein's Misconduct and Related Discipline</u>

Defendant Klein has a long history of poor driving.  (Pls. Ex. A.)  Among other things, Defendant Klein has been involved, as the driver, in at least five accidents and has committed several moving violations.  (<u>Id.</u>)  On or about November 5, 1996, for example, Klein was served with a written notice of disciplinary action for failing to notify his commanding officer that his personal car registration and New Jersey driver's license had been suspended.  On December 19, 1996, a hearing was conducted at which Klein was represented by counsel.  (Mun. Def. Stat. Facts ¶ 15(a).)  Klein was ultimately found guilt of "misconduct," "driving while driving privileges suspended" and "allowing his vehicle to be operated on the public highways while his registration privileges were suspended," for which he was suspended for a 30 day period beginning on February 1, 1996. (Pls. Ex. B.)  A three-page decision accompanying the suspension order was issued by Defendant Jankowski.  (<u>Id.</u>)

Defendant Klein has been disciplined for other conduct as well.  On or about August 4, 1997, Defendant Jankowski filed a Preliminary Notice of Disciplinary Action against Klein, seeking his removal effective September 13, 1997, based on charges arising from an off-duty incident whereby Klein discharged his gun at his home.  (Mun. Def. Stat. Facts ¶ 15(b).)  A hearing was convened, at which Klein was represented by counsel, and Klein

was found guilty of conduct unbecoming an officer, and of violating police department rules regarding the handling of firearms.  Klein was suspended for 45 days.  (Id.)

On or about April 5, 2000, Director Jankowski again filed a Preliminary Notice of Disciplinary Action against Klein, seeking his removal, based on charges that he was in possession of a controlled dangerous substance.  (Id. at ¶ 15(c).) A hearing was scheduled for May 11, 2000 at which Klein was represented by counsel.  Meanwhile, on or about April 26, 2000, Director Jankowski issued another Notice of Disciplinary Action against Klein based on an incident involving reckless driving while off-duty.[3]  (Id. at ¶ 15(d).)  A disciplinary hearing on this matter seeking Klein's suspension or removal was scheduled for June 8, 2000.[4]  The fatal accident at issue here occurred on May 21, 2000.

In total, Klein was disciplined on roughly 17 different occasions between 1992 and 2000.  (Mun. Def. Ex. 6.)  There is, however, no dispute in this case that Klein was off duty at the

---

[3] In addition, the investigating officers reported that Klein was intoxicated when they spoke with him about the incident.  (Mun. Def. Stat. Facts ¶ 15(d).)

[4] Prior to that hearing, Mr. Jankowski had recommended to Mayor McGeary on at least one occasion that Klein be fired, though Defendant McGeary rejected that suggestion.  (Id. at 47:1-4.)  Mr. Jankowski discussed Klein's criminal and disciplinary issues with the Mayor "half a dozen times."  (Id. at 56:5-6.)

time of this accident, and there is no evidence that any
Municipal Defendant had knowledge that Klein was drinking and
driving on the night of the accident.

    D.   Procedural History

    Plaintiffs here are Freddi Bilbili, Ervin Bilbili, Pjerim
Gjecaj, Anjaeza Bilbili (the wife of the Ervin Bilbili) and
Shygyrie Cena, both as Administratrix of the Estate of Gazmend
Cena and in her individual capacity.  Plaintiffs filed two
separate complaints in Superior Court, Atlantic County, on May
20, 2002, alleging federal § 1983 causes of action and
supplemental state law claims.  Notice of removal pursuant to 28
U.S.C. § 1446 was filed by Defendant Egg Harbor City on or about
June 21, 2002.  The two actions were consolidated in this Court
by order dated August 14, 2002. [Docket Item 13.]  This Court has
subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and
1367.

**II.  SUMMARY JUDGMENT STANDARD OF REVIEW**

    Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the
evidence is such that a reasonable jury could return a verdict
for the non-moving party."  See Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986).  A fact is "material" only if it might

affect the outcome of the suit under the applicable rule of law.
Id.  Disputes over irrelevant or unnecessary facts will not
preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material
fact, the court must view the evidence in favor of the non-moving
party by extending any reasonable favorable inference to that
party; in other words, "the nonmoving party's evidence 'is to be
believed, and all justifiable inferences are to be drawn in [that
party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999)
(quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry
is whether there are "any genuine factual issues that properly
can be resolved only by a finder of fact because they may
reasonably be resolved in favor of either party."  Liberty Lobby,
477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72
F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The moving party always bears the initial burden of showing
that no genuine issue of material fact exists, regardless of
which party ultimately would have the burden of persuasion at
trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);
Country Floors v. Partnership of Gepner and Ford, 930 F.2d 1056,
1061-63 (3d Cir. 1991).

## III. DISCUSSION

A.   Section 1983 Substantive Due Process Claims[5]

Plaintiffs here claim a violation of the Fourteenth Amendment Substantive Due Process Clause under 42 U.S.C. § 1983, alleging that Defendants failed to protect them from a drunk driver.[6] Because Plaintiffs have failed to point to sufficient evidence of the requisite "predicate conscience-shocking behavior," their constitutional claims must be dismissed.  Miller v. City of Philadelphia, 174 F.3d 368, 377 (3d Cir. 1999).

"[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion of private actors.  The Clause is phrased as a limitation on the State's power to act, not as a

_____

[5] As an initial matter, the Egg Harbor City Police Department will be dismissed.  It is well-established that in a section 1983 cause of action, police departments can not be sued in conjunction with municipalities because police departments are merely administrative arms of the local municipality and not separate judicial entities.  Linden v. Spagnola, No. 99-2432, 2002 U.S. Dist. LEXIS 14573, at *17-18 (D.N.J. June 27, 2002); DeBillis v. Kulp, 266 F.Supp.2d 255, 264 (E.D.Pa. 2001).

[6] Section 1983 provides, in pertinent part:

    Every person who, acting under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

guarantee of certain minimal levels of safety and security." Id. at 195.  In other words, the Due Process Clause "forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." Id.

Rather, the "core of the concept" of due process is "the protection against arbitrary action." County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998).  It is well-settled that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Id. at 846 (citing Collins v. Harker Heights, 503 U.S. 115, 129 (1992)). DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189 (1989).  And, substantive due process is violated by executive action only when it "can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." Collins, 503 U.S. at 128.

"While the measure of what is conscience-shocking is no calibrated yardstick," Lewis, 523 U.S. at 847, those actions that would violate the "decencies of civilized conduct," Rochin v. California, 342 U.S. 165, 172-73 (1952), and which are so "'brutal' and 'offensive' that [they] do not comport with traditional ideas of fair play and decency," Breithaupt v. Abram, 352 U.S. 432, 435 (1957), certainly satisfy that standard.  The

Third Circuit has "suggested" that the "shocks the conscience"
test applies to all substantive due process cases.  Smith v.
Marasco, 318 F.3d 497, 507 (3d Cir. 2003) (citing Miller v. City
of Philadelphia, 174 F.3d 368, 374-75 (3d Cir. 1999)).

     Far from shocking the conscience, the behavior of the
Defendants here was at most negligent.  As to Defendant Craig,
this Court has already held that

> although Klein was intoxicated on the night of the
> accident, no evidence suggests Patrolman Craig was
> aware of that fact.  Not only did Craig not observe
> Klein swerving, but when he approached Klein's vehicle
> Craig did not observe anything that would have
> indicated Klein was not sober.  For these reasons,
> Craig's failure to approach Klein's vehicle to assess
> whether Klein was, in fact, inebriated, was at most
> negligent.  See Egan, 148 A.2d at 836; Mantz, 239 F.
> Supp. 2d at 508 (a showing of willful misconduct
> requires "'much more' than negligence").  To be sure,
> Craig testified that he never got closer than 30 feet
> to Klein.  As a result, Craig was not able to, for
> example, detect the smell of alcohol on Klein's breath
> or look for open alcoholic beverages in the vehicle.
> However, his failure to do those things can, at best,
> be characterized as negligence as he had no knowledge
> of any fact indicating that Klein was drunk.

(Feb. 15, 2005 Slip Op. at 25-26 (footnote omitted).)  And,
"[l]iability for negligently inflicted harm is categorically
beneath the threshold of constitutional due process."  County of
Sacramento v. Lewis, 523 U.S. 833, 848-49 (1998); Fagan v. City
of Vineland, 22 F.3d 1296, 1305 (3d Cir. 1994).  Moreover, if
Craig's failure to remove Klein from the road on the night of
fatal accident does not shock the conscience, that the Municipal
Defendants may have condoned Craig's decision can likewise not be

11

unconstitutionally arbitrary.  Just like Craig, the Municipal
Defendants were not "deliberately indifferent," Miller, 174 F.3d
at 375, to the Plaintiffs' safety.[7]

    Plaintiffs additionally argue that the defendants created
the danger which allegedly caused their injuries.  The state-
created danger doctrine is "an exception to the general rule that
the state does not have a general affirmative obligation to
protect its citizens from the violent acts of private
individuals."  Smith, 318 F.3d at 506.  Plaintiffs here maintain
that the Municipal Defendants and Defendants Jankowski and Craig
caused the Plaintiffs to be injured by failing to prevent an off-
duty police officer with a history of misconduct from driving
while intoxicated.[8] Because the acts or omissions complained of

---

[7] "[A] local government may not be sued under § 1983 for an
injury inflicted solely by its employees or agents.  Instead, it
is when execution of a government's policy of custom, whether
made by its lawmakers or by those whose edicts or acts may fairly
be said to represent official policy, inflicts the injury that
the government as an entity is responsible under § 1983." Monell
v. Dept. of Social Services of City of New York, 436 U.S. 658,
698 (1978).  In fact, a municipality can only be held liable
under Section 1983 when the municipality has officially
sanctioned or ordered the final decision.  City of St. Louis v.
Prapotnik, 485 U.S. 112 (1987).  As the discussion here
illustrates, though, Plaintiffs were not deprived of any
constitutional rights and, thus, cannot succeed under § 1983.

[8] Plaintiffs' "state-created danger" argument centers on
distinct conduct: (1) Craig's failure to prevent Klein from
driving following the traffic stop; (2) the implementation by the
Municipal Defendants and Jankowski of a policy permitting
patrolmen to extend professional courtesy to fellow officers; and
(3) the failure of the Municipal Defendants and Jankowski to
suspend or discharge Klein prior to the date in question.  These
acts will be treated together in the following discussion.

12

by these defendants are not sufficiently shocking or foreseeable, Plaintiffs' argument fails.  <u>Fagan v. City of Vineland</u>, 22 F.3d 1296, 1305 (3d Cir. 1994) (holding "shocks the conscience" standard is the same in cases of government action and government omission).

Although, as noted above, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion of private actors," <u>DeShaney</u>, 489 U.S. at 195, state actors may be liable under § 1983 in instances of "state-created danger."  A state-created danger is established upon showing:  (1) the harm caused was foreseeable and fairly direct; (2) the state actor willfully disregarded the safety of others; (3) there existed some relationship between the state actor and the plaintiff; and (4) the state actor used his authority to create an opportunity for the third party's crime to occur that otherwise would not have existed.  <u>See</u> <u>Kneipp v. Tedder</u>, 95 F.3d 1199 (3d Cir. 1996).  To make a showing of state-created danger, a plaintiff must prove <u>each</u> of these four prongs.  Even extending all favorable inferences to Plaintiffs as the parties opposing summary judgment, in this case Plaintiffs cannot make the required factual showing upon which a reasonable jury could rule in Plaintiffs' favor.

13

(1)  <u>Foreseeability</u>

_____The harm caused to Plaintiffs here was not "foreseeable" or
"fairly direct."  The Court summarized the lack of directness in
its February 15, 2005 Slip Opinion:

> Plaintiffs argue that if Defendants had properly
> disciplined Klein, he would have been removed from the
> force long before the accident took place.  As noted
> above, though, Defendant Klein was off-duty on the
> night of the accident.  Taking Plaintiffs' argument to
> it logical conclusion, then, Plaintiffs are asserting
> that if Defendants had acted properly, Klein would not
> have been an officer with the Egg Harbor Police
> Department on the night in question; Patrolman Craig
> would not have extended Klein any professional courtesy
> after pulling his vehicle over; Craig would have
> approached Klein's vehicle and, more likely than not,
> discovered evidence that Klein was inebriated; Craig
> would have taken some action to prevent Klein from
> further operating his vehicle that evening; and,
> finally, the fatal accident would have been prevented.
> That argument is attenuated at best.

(Feb. 15, 2005 Slip Op. at 26-27.)  For those reasons, Plaintiffs
cannot satisfy the first prong as to Municipal Defendants or
Defendant Jankowski.

Similarly, Plaintiffs are unable to demonstrate that the
harm caused was a foreseeable consequence of Craig's conduct.
Indeed, Patrolman Craig did not know of Klein's history of
misconduct involving alcohol.  (<u>Id.</u> at 25.)  As noted above,
Craig was not aware, nor was there any manifestation suggesting
that Klein was inebriated at the time he stopped Klein.  (<u>Id.</u>)
Craig saw Klein's vehicle speeding, no more and no less.  Thus,
the fatal collision that occurred shortly after he stopped Klein
was not reasonably foreseeable.

14

_____(2)  <u>Willful Disregard</u>

_____The Third Circuit has made clear that the wilful misconduct prong can only be satisfied by conduct that shocks the conscience.  <u>Smith</u>, 318 F.3d at 507.  This Court has already determined, though, that none of these Defendants' acts or omissions at issue meets that standard.  That conclusion is dispositive of this inquiry as well._____

_____In any event, the Court has previously held that the acts of Municipal Defendants and Defendants Jankowksi and Craig did not amount to wilful misconduct.  (<u>See</u> Feb. 15, 2005 Slip Op. 21-28.) Specifically, the Court examined and rejected, for purposes of Plaintiffs' state law claims, the argument that the Municipal Defendants and Defendants Jankowski and Craig willfully disregarded the safety of the Plaintiffs by ignoring a foreseeable risk or danger caused by Klein.  (<u>Id.</u> at 21-28.)

For these reasons, Plaintiffs can not meet the second requirement of the state-created danger test.[9]

_____

_____

[9] Because neither of the first two prongs has been satisfied, it is unnecessary for the Court to examine the final two requirements – relationship and use of authority.

15

The Third Circuit in Hall v. Feigan, No. 03-2784, 2004 U.S.
App. LEXIS 14653, at *1 (3d Cir. July 16, 2004), was presented
with similar facts and legal issues as those before the Court
here.[10]  There, Plaintiff Elizabeth Hall had brought a suit
against Easthampton Township and certain members of the
Easthampton Township Police Department, as well as others, under
42 U.S.C. § 1983 for injuries resulting from a car accident with
a drunk driver.  Shortly before the accident, an on-duty police
officer had, through close contact with the defendant, learned
that she had been drinking.  In an unpublished opinion affirming
the district court's decision, Civil No. 00-6254 and 01-1639
(D.N.J.) (Kugler, J.), the court summarized the facts as follows:

> On April 10, 1999, at approximately 1:45 a.m.,
> [Plaintiff] Hall was backing out of her driveway when
> her car was struck by a vehicle driven by [Defendant]
> Tracy Feigan.  As a result of the accident, Hall
> suffered permanent brain damage and is no longer able
> to take care of her child.  Shortly before crashing
> into Hall's car, Feigan, a 27-year-old go-go dancer,
> had stopped at a Mobil On the Run gas station
> convenience store, having just left work at the Golden
> Moon strip club, where she had consumed at least five
> alcoholic beverages during her shift.  When Feigan
> entered the Mobil On the Run, she recognized defendant
> Stephen Sawyer, a police officer of defendant East
> Hampton Township, who had stopped her for speeding
> approximately two months before.  Sawyer was on duty at
> the time of the convenience store encounter.

---

[10] Because Hall is unpublished, it is not binding authority.
"However, because of the case's factual similarity to [this one,
the Court] look[s] to the decision as a paradigm of the legal
analysis" that should be followed.  Drinker v. Colonial Sch.
Dist., 78 F.3d 859, 865 n.12 (3d Cir. 1996).

Feigan was a recidivist speeder who had been
classified by the State of New Jersey as a "persistent
violator."  She had eleven speeding convictions and her
driving privileges had been suspended ten times.  When
Officer Sawyer had stopped Feigan for speeding
approximately two months before, he had downgraded
Feigan's offense and had only cited her for not wearing
a seatbelt, a non-moving violation, because given the
excessive number of points on her license, she would
have lost her driving privileges if she had been
convicted of speeding.  Not surprisingly, when Feigan
encountered Sawyer at the convenience store on April
10, 1999, she went up to him, kissed him on the cheek
and thanked him for not giving her a speeding ticket a
couple of months before.  When she did so, Sawyer
smelled alcohol on her breath and hence knew that she
had been drinking.

At the time, Feigan was smoking a cigarette in the
store, and Sawyer repeatedly told her to put it out.
It was Sawyer's understanding that Feigan had just
gotten off work at the Golden Moon, where the go-go
dancers are given drinks as tips.  Despite this
knowledge, and the fact that he knew Feigan had been
drinking and thought that she was intoxicated, and also
despite the fact that Sawyer knew that she had a very
poor driving record, Sawyer did not attempt to
determine if Feigan was drinking and driving, or
attempt to enforce the driving while intoxicated laws
against her.  Feigan testified that while she was
talking to Sawyer in the convenience store, she
probably had her keys in her hand.

After joking around with Officer Sawyer, Feigan
left the store and got behind the wheel of her car,
which was parked in front of the convenience store and
easily visible to Sawyer.  Less than five minutes later
she crashed into Hall's car.  At the time of the
collision, Feigan did not have her headlights on.

Id. at *1-4.

The District Court held that Hall had not been deprived of a

constitutionally protected right and, thus, granted summary

judgment on the section 1983 cause of action.  On appeal, Hall

17

raised two arguments regarding her substantive due process
claims: (1) that the officer's decision not to enforce the
driving while intoxicated laws against Feigan was arbitrary and
capricious and shocked the conscience; and (2) that the policy of
the Easthampton Township of allowing its officers "unfettered
discretion" violated the Due Process Clause and that this policy
authorized and encouraged the unconstitutional arbitrary and
discriminatory enforcement of the law.  Id. at *4.  The Third
Circuit rejected both arguments and affirmed the decision of the
court below.

    In rejecting the argument that the failure of Officer Sawyer
to take action against Feigan under the facts described above
satisfied the "shocks the conscience" test, the court held that
"[i]n the absence of a duty to protect Hall, and in the absence
of evidence that Sawyer acted in willful disregard of actual
knowledge of a serious risk of Hall's safety . . ., the case does
not come close to meeting the 'shocks the conscience' test."
Hall, 2004 U.S. App. LEXIS 14653, at *8 (citing DeShaney v.
Winnebago County Dep't of Social Servs., 489 U.S. 189 (1989)).

    Here, the facts supporting a claim under § 1983 are even
weaker than those in Hall.  Indeed, the Court already has held
that Craig's acts on the night of the fatal accident did not
amount to willful disregard of actual knowledge of a serious risk
to Plaintiffs.  (See Feb. 15, 2005 Slip Op. at 25.)  As noted by

the Court, Patrolman Craig testified that he was not aware of any prior instances of misconduct involving alcohol by Defendant Klein. (Id.)   In Hall, on the other hand, the officer was aware of multiple violations previously committed by the driver – in fact, the reason he downgraded her offense was because he was aware of the excessive number of points on her license resulting from moving violations. Hall, 2004 U.S. App. LEXIS 14653, at *2-3.   Thus, Plaintiffs' attempt to distinguish Hall on the grounds that the prior speeding incident involving Feigan was far removed in time from the fatal collision is not persuasive.

Moreover, the officer in Hall knew that Feigan had been drinking, that she had a very poor driving record and that she had her keys in her hand.  Additionally, he was able to see her car from where he had been talking with her.  Here, on the other hand, Craig, a part-time patrolman, did not know of Klein's record on misconduct, especially that involving alcohol; nor did he have any reason to suspect Klein of being intoxicated on the night in question. (Feb. 15, 2005 Slip Op. at 25-26.)

The second issue on appeal in Hall was the constitutionality of the police department's policy allowing "Easthampton Township police officers [to] exercise their discretion in deciding whether to charge individuals with certain driving offenses or whether to downgrade the charges, again solely at the officer's discretion." Hall, 2004 U.S. App. LEXIS 14653, at *8-9.  The

19

court rejected that argument as well, holding that "Hall has no substantive due process right, as a third party, to be the beneficiary of non-discriminatory (here preferential) conduct allegedly directed at Feigan." Id. at *10.

> While Officer Sawyer's decision not to investigate the state of intoxication of a go-go dancer who kissed him in gratitude for previously having not ticketed her for speeding may seem unsavory, Officer Sawyer had no specific duty to conduct such an investigation under the circumstances of this case.  Despite her protestations to the contrary, Hall can point to no cognizable substantive due process right that was violated in this situation.

Id. at * 10-11.

Here, Plaintiffs allege the existence of an inadequate training program giving officers the discretion to extend professional courtesies to other officers within the department during routine traffic stops.  Like in Hall, Craig's decision not to further investigate Klein pursuant to that alleged policy may have been "unsavory."  However, for the same reasons as the court articulated in Hall, Craig's failure to further investigate Klein's level of intoxication did not result in a deprivation of Plaintiffs' due process rights.[11]

---

[11] Because, as the Court concludes, there was no deprivation of Plaintiffs' substantive due process rights, the Court need not address the issues of qualified immunity.  See Miller, 174 F.3d at 376 n.6 ("Because we determine that Appellants' argument on appeal does not assert a valid claim of a constitutional violation, we do not reach the issue of qualified immunity.")

B.    State Law Claims – New Jersey Tort Claims Act Immunity

There remain a number of state law claims pending against the Municipal Defendants and Defendants Jankowski and Craig. Because those defendants are entitled to immunity under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. ("NJTCA" or "Act"), the state claims must be dismissed as well.

In 1972, in response to the judicial abrogation of sovereign immunity in Willis v. Department of Cons. & Econ. Dev., 264 A.2d 34 (N.J. 1970), the New Jersey State Legislature adopted the Tort Claims Act.

> The overall purpose of the Act was to reestablish the immunity of public entities while coherently ameliorating the harsh results of the doctrine. The theme of the Act is immunity for public entities with liability as the exception. Even where liability is present, the Act sets forth limitations on recovery. One is the limitation on the recovery of pain and suffering damages.

Gilhooley v. County of Union, 753 A.2d 1137, 1140 (N.J. 2000) (internal citations omitted). "The guiding principle of the Tort Claims Act is that 'immunity from tort liability is the general rule and liability is the exception' . . . ." Coyne v. New Jersey, 867 A.2d 1159, 1163 (N.J. 2005) (citing Garrison v. Tp. of Middletwon, 712 A.2d 1101, 1103 (N.J. 1998)).

Here, Defendant Craig is immune from liability under N.J.S.A. 59:3-2(b). In Perona v. Tp. of Mullica, 636 A.2d 535 (N.J. Super. Ct. App. Div. 1994), the court held that 59:3-2(b) provided immunity to "police officers in the exercise of their

21

police function."  There, a husband and wife sued Mullica Township and two of its officers after the officers failed to take the wife, who was mentally disturbed, to a screening facility following their response to a domestic disturbance complaint.  Upon arrival at the plaintiffs' residence, the husband informed the officers that he had observed his wife walking near traffic on a nearby highway.  The husband also told the officers that his wife had left a handwritten note addressed to him stating, in essence, that he would never see her again and that he should take care of their daughter.  The note also stated in the margin that "I loved you more than I ever showed it."

The husband informed the officers that he was concerned his wife may commit suicide, especially considering that she had been treated several weeks before for depression.  Despite that information, the officers concluded (based in part on their observation that she did not seem depressed) that they could not offer assistance.  Shortly after the officers departed the residence, the wife left her home and apparently attempted suicide by placing herself in front of traffic on the same nearby highway on which her husband had found her earlier.

The court in Perona held that the officers had made a "discretionary determination[]" in deciding not to take the wife to the screening facility, thereby entitling them to immunity under 59:3-2(b).  Id. at 29.  The court reasoned that because

22

"operational decisions," such as those made by the officers, are covered by 59:3-2(b), the officers were protected from liability. Id.

To be sure, N.J.S.A. 59:3-2 includes a limitation on immunity, stating that: "Nothing in this section shall exonerate a public employee for negligence arising out of acts or omissions in carrying out his ministerial functions."  "A ministerial act is one which public officials are required to perform upon a given state of facts in a prescribed manner, in obedience to the mandate of legal authority and without regard to their own judgment or opinion concerning the propriety or impropriety of the act to be performed." Ritter v. Castellini, 414 A.2d 614, (N.J. Super. Ct. Law Div. 1980); see Morey, 556 A.2d at 815 (same) (citing Black's Law Dictionary 1148 (4th ed. 1968)).

Thus, for example, in Wuethrich v. Delia, 341 A.2d 365 (N.J. Super. Ct. App. Div. 1975), the court declined to extend the protections of N.J.S.A. 59:2-3 to a township where a police department failed to respond to a report of violent behavior by a man carrying a gun.[12] In that case, less than 12 hours after the first report was made to the police department, that same individual shot and killed a man.  The court in Wuethrich concluded there that "once the police had received warnings as

---

[12] Interpretations of N.J.S.A. 59:2-3 apply equally to 59:3-2 and vice versa.  Longo v. Santoro, 480 A.2d 934 (N.J. Super. Ct. App. Div.), cert. denied, 491 A.2d 706 (1984).

23

alleged by plaintiff, their obligation to investigate was clear.
It was not discretionary but ministerial." Id. at 411.

In this case, though, unlike Wuethrich, Defendant Craig's
obligation to investigate whether Klein was intoxicated was not
clear.  As noted several times above, Craig had no reason to
believe that Klein was intoxicated when he pulled over Klein's
vehicle.  For that reason, Craig's obligation to detain Klein was
far from clear and, thus, he was acting primarily with regard to
his "own judgment or opinion concerning the propriety or
impropriety of the act to be performed."  Craig did testify, to
be sure, to a policy of professional courtesy that patrolmen in
Craig's position would generally extend to off-duty officers who
were the subject of routine traffic stops.  At best, though, if
such a policy existed it was an "unofficial" policy that would
not have "required [him] to perform upon a given state of facts
in a prescribed manner."  Accordingly, Craig is immune from
liability under N.J.S.A. 59:3-2(b) for his failure to detain
Klein or otherwise prevent him from driving while intoxicated on
the night in question.

Additionally, Officer Craig is protected from liability by
N.J.S.A. 59:3-3, which provides that "[a] public employee is not
liable if he acts in good faith in the execution or enforcement
of any law."  This provision of New Jersey law is quite forgiving
of the police officer who makes an imperfect response to a

24

situation encountered on patrol where an accident later occurs
that might have been prevented by a more diligent law enforcement
effort.  In <u>Morey v. Palmer</u>, 556 A.2d 811 (N.J. Super. Ct. App.
Div. 1989), for example, the court applied 59:3-3 to protect an
officer from liability for failing to prevent an accident.  In
that case, a patrolman responded to a call that there was a
pedestrian in the middle of a street.  Upon arrival at the scene,
the officer observed the individual to be intoxicated and ordered
the individual to leave from the middle of the road, which the
individual did.  The officer then left the scene and, almost 4
hours later, the individual was struck and killed by a truck not
far from the location where the officer had encountered him
earlier.  The decedent's representative sued, among others, that
officer.  The court there held that the officer was entitled to
immunity under N.J.S.A. 59:3-3, explaining:

> So long as Officer Vinci performed some enforcement act
> in the chain of events leading to plaintiff's injury,
> subsequent omissions will also be protected under the
> immunity.  When a sequence of events is involved, one
> enforcement event which constitutes an "act" will stamp
> the entire sequence as an "act" regardless of other
> events which involve failures to act.  Here, Officer
> Vinci's discretionary election to limit his response to
> ordering and escorting decedent off the roadway is a
> sufficient "act" to secure the immunities of N.J.S.A.
> 59:3-3 . . . .  Therefore, even if Officer Vinci was
> negligent in determining whether decedent was
> incapacitated, so long as he made that determination in
> good faith N.J.S.A. 59:3-3 will protect him from
> liability.

<u>Id.</u> at 816.  Similarly here, Craig's "discretionary election" to

25

limit his response to verbally ordering Klein to drive slower is sufficient to entitle him to the immunity provided in N.J.S.A. 59:3-3.

Defendants McGeary and Jankowski are also entitled to immunity under the New Jersey Tort Claims Act.  Plaintiffs allege that Defendants Klein and Jankowski failed to properly discipline Klein prior to the accident, thereby indirectly allowing the accident to occur.[13] See Corridan v. City of Bayonne, 324 A.2d 42 (N.J. Super. Ct. App. Div. 1974) (holding a jury could have held the defendant city liable for the unlawful use of a police department issued firearm by an off-duty intoxicated police officer where the city had prior knowledge of the officer's alcohol problems and violent tendencies, though not discussing questions of immunity).  "Whether to discharge or retain a police officer after he or she has been charged with official misconduct is, of course, a discretionary decision." Denis v. City of Newark, 704 A.2d 1003, 1009 (N.J. Super. Ct. App. Div. 1998). New Jersey courts have not answered the question, however, "whether a public entity should be immunized from liability for exercising that discretion . . . ." Id.  For the following reasons, this Court believes that if a New Jersey state court

---

[13] Plaintiffs have also filed claims against the Municipal Defendants based on respondeat superior liability arising from the negligence of Patrolman Craig.  (Counts 26 and 27.)  Because Defendant Craig is immune from liability under state law, though, Counts 26 and 27 will be dismissed as well.

were to resolve this issue as it relates to this case, it would conclude that McGeary and Jankowski should be immune from liability.

Subsection (b) of N.J.S.A. 59:2-3 "deals with the operational level of decisionmaking and does not implicate high level policy making decisions." Denis, 704 A.2d at 316 (citing Costa v. Josey, 415 A.2d 337 (N.J. 1980)). The sorts of discretionary acts which are covered by subsection (b) are those which "call[] for the exercise of personal deliberations and judgment, which in turn entail[] examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Berel Co. v. Sencit F/G McKinley Assocs., 710 F.Supp. 530, 541 (D.N.J. 1989) (quoting Kolitch v. Lindedahl, 497 A.2d 183 (N.J. 1985) (emphasis in original omitted)). The disciplinary actions taken by Defendants McGeary and Jankowski in this case required exactly that sort of personal deliberation and, thus, give rise to their immunity.

As noted above, Jankowski issued a Notice of Disciplinary Action against Klein on April 26, 2000, based on an incident involving reckless driving while off-duty. (Mun. Def. Stat. Facts ¶ 15(d). A disciplinary hearing on this matter seeking Klein's removal was scheduled for June 8, 2000. Plaintiffs here argue that Klein should at the very least have been suspended from the Egg Harbor City police force prior to the night of the

27

fatal accident.  Plaintiffs' argument, then, must hinge on N.J.A.C. § 4A:2-2.5(a), providing for immediate suspension of state employees.

Pursuant to N.J.A.C. § 4A:2-2.5(a), an employee may be suspended immediately, without the opportunity for a hearing, in certain limited circumstances.[14] Under subsection (a)(1):

> An employee may be suspended immediately and prior to a hearing where it is determined that the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services. However, a Preliminary Notice of Disciplinary Action with opportunity for a hearing must be served in person or by certified mail within five days following the immediate suspension.

N.J.A.C. § 4A:2-2.5(a)(1).  Under the clear language of this provision, an employer having the authority to suspend an employee must necessarily exercise personal discretion and judgment in making his decision.  Because suspension under subsection (a)(1) is not specifically directed but, rather, is left up to reasoned judgment, the immunity afforded by N.J.S.A. 59:2-3(b) is applicable to the decision by McGeary and Jankoswki not to suspend Klein prior to the June 8, 2000 hearing.

---

[14] Only subsection (a)(1) is applicable here.  Subsection (a)(2) permits immediate suspension "when the employee is formally charged with a crime of the first, second or third degree, or a crime of the fourth degree on the job or directly related to the job."  N.J.A.C. § 4A:2-2.5(a)(2).

"The philosophical foundation" for the "expansive insulation from suit" afforded by N.J.S.A. 59:2-3(b), is essentially the theory that "it can not be a tort for government to govern." Berel Co., 710 F.Supp. 541 (citing Amelchenko v. Freehold Borough, 201 A.2d 726, 731 (N.J. 1964)).  By seeking to have this Court impose liability on Defendants McGeary and Jankoswki for not immediately suspending Klein prior to a hearing, however, that is exactly what Plaintiffs here seek to do.  Such an outcome would contravene the immunity conferred by N.J.S.A. 59:2-3(b). Plaintiffs' negligence claims against Defendants McGeary and Jankowski will be dismissed.

Finally, because Defendants Craig, McGeary and Jankowski are immune from liability under the Act, the municipality is immune from liability as well.[15] N.J.S.A. 59:2-2(b) ("A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable."); see Ernst v. Borough of Ft. Lee, 739 F.Supp. 220 (D.N.J. 1990) (holding where officers were immune from liability, borough was also entitled to immunity).  Therefore, as required by New Jersey law, the state law claims against Defendants Egg Harbor City and the Egg Harbor City Police Department will also be dismissed.

---

[15] To the extent Plaintiffs argue that these Defendants are not immune under the Act because their acts or omissions constituted wilful misconduct under the Act, this Court has already resolved that issue in favor of the defendants. (See Feb. 15, 2005 Slip Op.)

## III. CONCLUSION

For the reasons explained above, the Court will grant the motions for summary judgment by Defendant Keron Kevin Derod Craig [Docket Item 73], Defendants Egg Harbor City, the Egg Harbor City Police Department, and James E. McGeary [Docket Item 74] and Defendant Jankowski [Docket Item 75.]   The Court will dismiss all counts of the Complaint against Egg Harbor City, the Egg Harbor City Police Department, Defendant McGeary, Defendant Jankowski and Defendant Craig and enter judgment in their favor and against Plaintiffs.

The accompanying Order is entered.   A trial date of July 18, 2005 has been set for the claims against the remaining defendants.[16]

  **June 14, 2005**                            **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            U.S. District Court

_____

[16] The remaining defendants are Charles E. Klein, III; Garry J. Tomasella; Sammie's Mullica Inn, Inc.; and G.T.'s Mullica Inn.